[Cite as *State v. Burton*, 2016-Ohio-672.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

       Plaintiff-Appellee

-vs-

JUSTIN LAMAR BURTON

       Defendant-Appellant

JUDGES:
Hon. Sheila G. Farmer, P. J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2015 CA 00027

O P I N I O N

CHARACTER OF PROCEEDING:       Criminal Appeal from the Court of Common Pleas, Case No. 2014 CR 01912

JUDGMENT:                  Affirmed

DATE OF JUDGMENT ENTRY:       February 22, 2016

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
RONALD MARK CALDWELL
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

EARLE E. WISE, JR.
122 Central Plaza North
Canton, Ohio 44702

*Wise, J.*

{¶1}   Appellant Justin Lamar Burton appeals his conviction and sentence on one count of Having Weapons While Under Disability entered in the Stark County Common Pleas Court following a jury trial.

{¶2}   Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

{¶3}   Appellant Justin Lamar Burton was charged with and convicted of one count of having weapons while under disability, a third degree felony. The charges arose from an incident which occurred on September 13, 2014. The relevant facts as set forth at trial are as follows:

{¶4}   Brandy Draper testified that on September 13, 2014, she left her residence at 647 Alan Page Drive SE, to walk to a nearby store. (T. at 99). She stated that she saw and recognized Ricki Turner in the area and tried to avoid her. (T. at 99, 101). Brandy knew Ricki from a series of problems between the two. (T. at 99-102, 104-106, 120, 123-126). A week or two before the date in question, the two women were involved in a dispute in the hallway of the residential complex at Alan Page Drive. (T. at 104-105). According to Brandy, Ricki became upset with her when she ate some eggs off of a plate belonging to Appellant. (T. at 105, 123). Ricki then stole Brandy's phone. (T. at 123). In retaliation, Brandy went into Ricki's apartment and messed it up by throwing items around. (T. at 123-125). Ricki retaliated by breaking Brandy's window. (T. at 124-125). Brandy filed a police report naming Ricki as the person who broke her window. (T. at 126).

{¶5}   On the day in question, September 13, 2014, Brandy testified that she decided to walk to the nearby Hall of Fame Mart, but opted to avoid the sidewalk in case

she were to run into Ricki and took an alternative path instead. She stated that she did this because after the prior incidents, people in the apartment complex had been telling her that Ricki was looking for her and wanted to fight. (T. at 106, 120). However, while she was walking back to the apartment, Brandy ran into Ricki, who was with three other females, Appellant Justin Lamar Burton, and two other males, identified by Brandy as Tre Von Pounds and Derelle Carter. (T. at 99, 101, 103-104, 133). The two women began to fight. (T. at 106). Brandy stated that she had a box cutter from work in her back pocket, and she pulled it out and cut Ricki's arm. (T. at 107-108).

{¶6} Brandy testified that Appellant then approached her and pulled a gun from the waistband of his pants. (T. at 108-109). Brandy turned and ran. (T. at 109). She stated that she ran into one of the apartment buildings, up two flights of steps, and out of the building into a parking lot. *Id.* She was shot in the back while in the parking lot and did not see who shot her. (T. at 14-15).

{¶7} Detective Terry Monter of the Canton Police Department investigated the shooting of Brandy Draper and the stabbing of Nicki Turner. He had to interview Draper at a Cleveland hospital where she had been life-flighted due to the near-fatal gunshot wound to her liver. Draper related to Monter what had happened and identified Appellant Burton as the person who had shot her. As part of Monter's investigation, police searched the area where the fight and shooting took place and found no shell casings or bullets. (T. at 166-167, 177).

{¶8} On cross-examination, Monter testified that he did find a gun at the apartment of Tre Von Pounds' sister. (T. at 172). Present in the apartment at that time were Pounds and Carter, as well as the sister and her baby that she had with Carter. The

gun, a Smith & Wesson .40 caliber semiautomatic handgun, did not have Appellant's DNA on it, nor his fingerprints. The gun belonged to Carter. (T. at 171-175, 182).

{¶9}   Brandy testified that the gun found by the police was the same gun that Appellant was chasing her with on September 13, 2014, at the Alan Page address. (T. at 141). She told the jury that it was silver. (T. at 134). The gun was not produced at trial.

{¶10}  The defense called one witness: Donna Wilson. Ms. Wilson stated that she was with Ricki Turner prior to the fight between Ricki and Brandy. (T. at 188-189). She testified that she was the only person standing with Ricki prior to the incident. (T. at 189). Ms. Wilson saw the two getting ready to fight. *Id.* She testified that Brandy started the incident by cutting Ricki. (T. at 190). She stated that there was no fight or physical contact before Brandy cut Ricki. *Id.* After Ricki was cut, Ricki ran. *Id.*

{¶11}  Ms. Wilson testified that she saw the Appellant at the time in question and he did not have a gun. (T. at 191). She further testified that she saw two other males at the scene, and that they did have a gun. (T. at 190).  Wilson testified at one point that Burton did not chase Draper, but later contradicted that on cross-examination, stating that he did chase her. She maintained, however, that only the two men had guns and were shooting at the fleeing Draper, and that Burton was more concerned about finding out who had cut Turner. (T. at 188-192, 198-207).

{¶12}  Wilson admitted on cross-examination that she did not contact the police despite being an eyewitness to a stabbing and a shooting. She did not tell anyone her story until an investigator from the Public Defender's Office contacted her. (T. at 192-195).

{¶13}  On December 11, 2014, a one-day jury trial commenced in this matter. On December 12, 2014, the jury returned a verdict of guilty as charged.

{¶14}  By Judgment Entry filed January 13, 2015, the trial court sentenced Appellant to a prison term of thirty-six (36) months.

{¶15}  Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶16}  "I. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIENCE [SIC].

{¶17}  "II. THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO DUE PROCESS OF LAW, A FAIR TRIAL, CONFRONTATION OF WITNESSES AND REASONABLE CROSS EXAMINATION BY IMPROPERLY EXCLUDING THE TRANSCRIPT OF SUCH WITNESSES' PRIOR STATEMENT BEING PRESENTED TO THE JURY PURSUANT TO EVID.R 613 AND IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶18}  THE TRIAL COURT'S IMPOSITION OF THE MAXIMUM SENTENCE WAS AN ABUSE OF DISCRETION AND NOT SUPPORTED BY THE RECORD.

**I.**

{¶19}  In his First Assignment of Error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.

{¶20}  A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Gulley*

(Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541.

**{¶21}** In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

**{¶22}** Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks, supra*. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541.

**{¶23}** "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Roberts* (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence *will also be*

*dispositive of the issue of sufficiency. Cuyahoga Falls v. Scupholm* (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, unreported.

**{¶24}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court: "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

**{¶25}** A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 388, 678 N.E.2d 541. An appellate court must make every reasonable presumption in favor of the judgment and Findings of Fact of the trial court. *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Clemons* (1998), 82 Ohio St.3d 438, 444, 696 N.E.2d 1009, citing *State v. Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d 492. Therefore, this Court's "discretionary power * * * should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; *See, also, Otten,* 33 Ohio App.3d at 340, 515 N.E.2d 1009.

**{¶26}**  In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Id.* at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.

**{¶27}**  In the case *sub judice*, Appellant was convicted of having weapons under disability in violation of R.C. §2923.13(A)(3) which states:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

\*\*\*

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

**{¶28}** Therefore, to find Appellant guilty of having a weapon while under a disability as alleged, the trier of fact would have to find that Appellant, unless relieved from disability as provided in section 2923.14 of the Revised Code, knowingly acquired,

had, carried, or used any firearm or dangerous ordnance, and that appellant was under indictment for or has been convicted of any felony offense of violence.

{¶29} Upon review, viewing the evidence in a light most favorable to the prosecution, we hold there was sufficient testimony to support a conclusion by the jury, beyond a reasonable doubt, that Appellant had a handgun while under disability.

{¶30} As set forth above, Brandy Draper testified that on September 13, 2014, she saw Appellant, with whom she was familiar, pull a handgun from the waistband of his pants after she cut Nicki Turner with the box-cutter.

{¶31} Appellant stipulated to two prior felony domestic violence convictions. The trial court submitted one of these stipulated convictions to the jury.

{¶32} Such evidence, if believed, was adequate to prove that Appellant had a firearm while under disability from a prior felony conviction of violence.

{¶33} We hold, therefore, that the state met its burden of production regarding each element of having weapons while under disability, and, accordingly, there was sufficient evidence to support Appellant's conviction.

{¶34} In his manifest weight of the evidence argument, Appellant argues that Brandy Draper's testimony was not credible. Appellant argues that the statements she gave to police when she was in the hospital contradicted her testimony at trial.

{¶35} Upon review of the record, we are not persuaded that the decisions of the jurors in assessing the evidence resulted in a manifest miscarriage of justice. The issue of credibility of Ms. Draper is one to be resolved by the trier of fact. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State*

*v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260.

**{¶36}** Appellant cross-examined Ms. Draper with regard to the alleged inconsistencies in her statements. The jury, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

**{¶37}** We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Appellant of the charge.

**{¶38}** Based upon the foregoing and the entire record in this matter, we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence.

**{¶39}** Accordingly, Appellant's First Assignment of Error is overruled.

## II.

**{¶40}** In his Second Assignment of Error, Appellant argues that the trial court erred in excluding prior statements made by witnesses. We disagree.

**{¶41}** Appellant argues that the trial court erred in not allowing admission of the transcript of the police interview with Brandy Draper taken at the hospital.

**{¶42}** The admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶43}** The trial court permitted Appellant to cross-examine Ms. Draper with the transcript for impeachment purposes. Draper testified that she could not say whether or not her statements as contained in the transcript were accurate.

**{¶44}** When Appellant moved to admit the transcript, the trial court held that Appellant had failed to establish a foundation for the transcript's admission, had failed to produce the actual tape recording, and had failed to show any inconsistencies between Ms. Draper's statement to the police and her trial testimony.

**{¶45}** Based on the foregoing, we do not find that the trial court abused its discretion. Appellant's Second Assignment of Error is overruled.

## III.

**{¶46}** In his Third Assignment of Error, Appellant argues that the trial court abused its discretion in imposing the maximum sentence in this matter. We disagree.

**{¶47}** For several years after the Ohio Supreme Court's decision in *State v. Foster* (2006), 109 Ohio St.3d 1, 845 N.E.2d 470, we consistently held that judicial fact-finding was not required before a trial court could impose non-minimum, maximum or consecutive prison terms. *See, e.g., State v. Williams,* Muskingum App. No. CT2009–0006, 2009–Ohio–5296, ¶ 19. Subsequently, by way of 2011 Am.Sub. H.B. No. 86, which became effective on September 30, 2011, the General Assembly expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of *consecutive* sentences that were effective pre-*Foster.* However, the provisions requiring findings for "maximum" and "more than minimum" sentences that the legislature did not intend to revive were explicitly repealed under H.B. 86. *See State v. George,* 5th Dist. Fairfield No. 14 CA 45, 2015–Ohio–3065, ¶ 11, citing *State v. White,* 1st Dist. Hamilton No. C–130114, 2013–Ohio–4225, ¶ 8. In other words, "[t]he trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 992 N.E.2d 491, 2013–Ohio–2021, ¶ 45 (2nd Dist.).

**{¶48}** Furthermore, in *State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912, a plurality opinion, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. *Id.*

**{¶49}** While recognizing the approach has been rejected by some Ohio appellate districts, we will herein utilize the *Kalish* framework as our standard of review in this felony sentencing context. *See State v. Bailey,* 5th Dist. Ashland No. 14–COA–008, 2014–Ohio-5129, ¶ 18–¶ 19.

**{¶50}** In the instant case, the trial court held a sentencing hearing and, as set forth in its written entry, conducted a review and application of the purposes of sentencing found in R.C. §2929.11 and the seriousness and recidivism factors found in R.C. §2929.12. *See* Sentencing Entry, January 13, 2015.

**{¶51}** The trial court ultimately gave appellant a thirty-six (36) month prison sentence for the third-degree felony, the maximum term within the range allowable under R.C. §2929.14(A)(2). Appellant argues that the trial court did not make any specific findings as to the danger to the community, the seriousness of the offense, or the protection of the public.

**{¶52}** Based on our review of the record, including Appellant's prior criminal history, which included a previous conviction for having weapons while under disability, we do not find the trial court acted clearly and convincingly contrary to law or abused its discretion in rendering a maximum sentence under the facts and circumstances of this case.

**{¶53}** Appellant's Third Assignment of Error is overruled.

**{¶54}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Farmer, P. J., and

Gwin, J., concur.

JWW/d 0209